FILED

11 OCT 11 PM 2:56

MIDDLE ... FLORIDA
TAMPA FLORIDA

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA
ex rel. LESA MARTINO WHALEN,

        Plaintiffs,

v.

OMNICARE, INC.,

        Defendants

_____/

Case No. 8:11-CV-2297-T-23AEP

**FILED UNDER SEAL**
**PURSUANT TO 31 U.S.C. §3730(b)(2)**
**DO NOT ENTER ON PACER SYSTEM**

## FALSE CLAIMS ACT QUI TAM COMPLAINT
## AND DEMAND FOR JURY TRIAL

1.     Relator Lesa Martino Whalen brings this action on behalf of the United States against

Omnicare, Inc. pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3729 *et*

*seq.*

2.     This action is filed under seal pursuant to 31 U.S.C. § 3730(b)(2).

3.     As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), Relator has provided

previously to the Attorney General of the United States and the United States Attorney for the

Middle District of Florida a statement of all material evidence and information related to this

Complaint.  This disclosure statement is supported by material evidence known to Relator

establishing the existence of Defendant's false claims.  Because the disclosure statement includes

attorney-client communications and work product of Relator's attorneys, and is submitted to the

Attorney General and the United States Attorney in their capacity as potential co-counsel in this

litigation, Relator understands this disclosure to be confidential.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under the False Claims Act pursuant to 31

U.S.C. § 3732(a) and § 3730(b), as well as 28 U.S.C. § 1331 and § 1335.

5.      Venue is appropriate in the Middle District of Florida under 28 U.S.C.§1391(b) and (c),

as well as 31 U.S.C. § 3732(a), because Omnicare can be found in and transacts business in this

District.

## THE PARTIES

6.      Lesa Martino Whalen is a licensed Florida pharmacist who was employed by Omnicare,

Inc. as a dispensing pharmacist in its Tampa, Florida pharmacy between April 2008 and January

2011.

7.      Omnicare, Inc. is a Fortune 500 national pharmacy company that participates in the

Medicare Part D prescription program. Omnicare describes itself this way:

> Omnicare, Inc., a Fortune 500 company based in Covington, Kentucky, is a
> leading provider of pharmaceutical care for the elderly.  Omnicare serves
> residents in long-term care facilities, chronic care and other settings comprising
> approximately 1.4 million beds in 47 states, the District of Columbia and Canada.
> Omnicare is the largest U.S. provider of professional pharmacy, related consulting
> and data management services for skilled nursing, assisted living and other
> institutional healthcare providers as well as for hospice patients in homecare and
> other settings.  Omnicare's pharmacy services also include specialty pharmacy
> operations and a wide range of support services for specialty pharmaceuticals.

Omnicare has approximately 70 percent of the long term care pharmaceutical business in the

United States.  Approximately 44 percent of Omnicare's annual sales are paid by Medicare,

while approximately 9 percent are paid by state Medicaid programs.  In Florida, Omnicare has

pharmacies in Tampa, Weston, and Pensacola, as well as in the Orlando and Ft. Myers areas.

The Tampa facility where Ms. Whelan worked is Omnicare's largest in Florida.

## RELEVANT FEDERAL AND STATE LAWS

8.      Pursuant to 42 C.F.R. §423.100, "Part D drug means ....[a] drug that may be dispensed only upon a prescription ...." **Exhibit 1**.

9.      Florida Statue 465.003(6) defines "dispense" as "mean[ing] the transfer of possession of one or more doses of a medicinal drug **by a pharmacist** to the ultimate consumer or his or her agent." **Exhibit 2**. Section 465.003(6) further provides that "[a]s an element of dispensing, the pharmacist shall, prior to the actual physical transfer... certify that the medicinal drug called for by the prescription is ready for transfer..."

10.     Florida Statute 465.003(13) defines the "practice of the profession of pharmacy" as including "dispensing." *Id.*

11.     Florida Statute 465.014(1) provides that "[a] person other than a licensed pharmacist or pharmacy intern may not engage in the practice of the profession of pharmacy...." **Exhibit 3**. Florida Statute 465.014(1) provides that a licensed pharmacist may not delegate to a pharmacy technician the duties, tasks, and functions "within the purview of 465.003(13)", which, as stated above, includes "dispensing." *Id.*

12.     Florida Administrative Code §64B 16-27.1001(3) requires that "[o]nly a pharmacist may make the final check of the completed prescription thereby assuming the complete responsibility for its preparation and accuracy." **Exhibit 4**.

## OMNICARE'S SUBMISSION OF FALSE AND FRAUDULENT MEDICARE PART D CLAIMS

13.     Omnicare used an automated or robotic ALV system to process and label approximately 40 percent of the drug orders processed at its Tampa pharmacy. But instead of using pharmacists to do the final check of drug orders, as required by state law to constitute a valid and lawful dispensing, Omnicare had unlicensed pharmacy technicians perform this task in the ALV area.

14.    The pharmacy techs at Omnicare's Tampa pharmacy were given the user names and passwords of two pharmacy managers (General Manager Todd Zisek and Manager John Keeling)[1] in order to be able to illegally check prescriptions in the ALV area.  This occurred from 2008 until October 2010[2] on a 24 hour per day, 7 days per week basis. [3] These managers' user names and passwords were used even when Todd Zisek and John Keeling were not at the facility at all, such as at night, on the weekend, or on holidays.

15.    Pharmacists Joseph Weeks, Archie Rodney and John Haynes were assigned to check orders in the ALV area if an audit or tours were present in the building.  Mr. Weeks told Ms. Whalen "we should never have let them do that for as long as we did."

16.    Ms. Whalen objected repeatedly to Ominicare's policy of having unlicensed techs do the final check on prescriptions rather than pharmacists.  First, Ms. Whalen sent the anonymous letter to the Florida Department of Health attached as **Exhibit 6** in which she pretended to be a pharmacy tech and objected to this practice.  Second, Ms. Whalen sent the November 12, 2010 email attached as **Exhibit 7** to General Manager Todd Zisek.  Third, Ms. Whalen sent the January 20, 2011 emails attached as **Exhibits 8 and 9** complaining about Todd Zisek and John Keeling respectively to Omnicare's CEO John Figueroa and to Omnicare's Area Director of Human Resources.  These letters were copied to the Florida Department of Health.

17.    By these actions, Omnicare caused false and fraudulent Part D claims to be submitted to the Medicare programs for drugs which were not actually dispensed by a pharmacist as required to be reimbursable under the Part D program.

---

[1] Todd Zisek's username was F11TA2 and his password was poundit.  John Keeling's username was F11JEK and his password was V734.
[2] In October 2010, a state pharmacy inspector came to Omnicare's Tampa facility around Columbus Day and observed pharmacy techs checking prescriptions instead of pharmacists.  At that point, Omnicare hired a temp agency to obtain temporary pharmacists to start checking prescriptions.
[3] Ms. Martino's handwritten notes documenting examples of instances where pharmacy techs fraudulently used Todd Zisek's or John Keeling's passwords are attached as **Composite Exhibit 5**.

18.    Upon information and belief, Omnicare engaged in similar conduct in its other pharmacies.

Respectfully submitted,

_K~ J Dar_

KEVIN J. DARKEN
Florida Bar No. 0090956
Cohen & Foster, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, FL  33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
Attorneys for Relators

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by hand delivery to: **Robert O'Neill**, United States Attorney, United States Attorney's Office, 400 N. Tampa Street, Ste 3200, Tampa, FL 33602; and by *Federal Express* to **Eric Holder**, United States Attorney General, Dept. of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-001 on this _11th_ day of October 2011.

_K~ J Dar_

KEVIN J. DARKEN
Florida Bar No. 0090956
Cohen & Foster, P.A.
201 E. Kennedy Boulevard, Suite 1000
Tampa, FL  33602
Telephone: (813) 225-1655
Facsimile: (813) 225-1921
Attorneys for Relators

[Code of Federal Regulations]

[Title 42, Volume 2]

[Revised as of October 1, 2005]

From the U.S. Government Printing Office via GPO Access

[CITE: 42CFR423.100]


[Page 1100-1103]


TITLE 42--PUBLIC HEALTH


CHAPTER IV--CENTERS FOR MEDICARE

& MEDICAID SERVICES,

DEPARTMENT OF HEALTH AND

HUMAN SERVICES


PART 423_VOLUNTARY MEDICARE PRESCRIPTION DRUG BENEFIT--Table of Contents


Subpart C_Benefits and Beneficiary Protections


Sec. 423.100  Definitions.


    As used in this part, unless otherwise specified-

    Actual cost means the negotiated price for a covered Part D drug

when the drug is purchased at a network pharmacy, and the usual and

customary price when a beneficiary purchases the drug at an out-of-

network pharmacy consistent with Sec. 423.124(a).

    Affected enrollee means a Part D enrollee who is currently taking a

covered Part D drug that is either being removed from a Part D plan's

EXHIBIT 1

formulary, or whose preferred or tiered cost-sharing status is changing.

Alternative prescription drug coverage means coverage of Part D drugs, other than standard prescription drug coverage that meets the requirements of Sec. 423.104(e). The term alternative prescription drug coverage must be either--

(1) Basic alternative coverage (alternative coverage that is actuarially equivalent to defined standard coverage, as determined through processes and methods established under Sec. 423.265(d)(2)); or

(2) Enhanced alternative coverage (alternative coverage that meets the requirements of Sec. 423.104(f)(1)).

Basic prescription drug coverage means coverage of Part D drugs that is either standard prescription drug coverage or basic alternative coverage.

Bioequivalent has the meaning given such term in section 505(j)(8) of the Food, Drug, and Cosmetic Act.

Contracted pharmacy network means pharmacies, including retail, mail-order, and institutional pharmacies, under contract with a Part D sponsor to provide covered Part D drugs at negotiated prices to Part D enrollees.

Covered Part D drug means a Part D drug that is included in a Part D plan's formulary, or treated as being included in a Part D plan's formulary as a result of a coverage determination or appeal under Sec. 423.566, Sec. 423.580, and Sec. 423.600, Sec. 423.610, Sec. 423,620, and Sec. 423.630, and obtained at a network pharmacy or an out-of-network pharmacy in accordance with Sec. 423.124.

Dispensing fees means costs that-

(1) Are incurred at the point of sale and pay for costs in excess of the ingredient cost of a covered Part D drug each time a covered Part D drug is dispensed;

(2) Include only pharmacy costs associated with ensuring that possession of the appropriate covered Part D drug is transferred to a

Part D enrollee. Pharmacy costs include, but are not limited to, any
reasonable costs associated with a pharmacist's time in checking the
computer for information about an individual's coverage, performing
quality assurance activities consistent with Sec. 423.153(c)(2),
measurement or mixing of the covered Part D drug, filling the container,
physically providing the completed prescription to the Part D enrollee,
delivery, special packaging, and overhead associated with maintaining
the facility and equipment necessary to operate the pharmacy. In the
case of pharmacies owned and operated by a Part D plan itself,
notwithstanding number (3) of this definition, dispensing fees are
understood to be the equivalent of all reasonable costs discussed in the
previous sentence, including the salaries of pharmacists and other
pharmacy workers as well as the costs associated with maintaining the
pharmacy facility and equipment necessary to operate the pharmacy; and

(3) Do not include administrative costs incurred by the Part D plan
in the operation of the Part D benefit, including systems costs for
interfacing with pharmacies.

Government-funded health program means any program established,
maintained, or funded, in whole or in part, by the Government of the
United States, by the government of any State or political subdivision
of a State, or by any agency or instrumentality of any of the foregoing,
which uses public funds, in whole or in part, to provide to, or pay on
behalf of, an individual the cost of Part D drugs, including any of the
following:

(1) An approved State child health plan under title XXI of the Act
providing benefits for child health assistance that meets the
requirements of section 2103 of the Act;

(2) The Medicaid program under title XIX of the Act or a waiver
under section 1115 of the Act;

[[Page 1101]]

(3) The veterans' health care program under Chapter 17 of title 38 of the United States Code;

(4) The Indian Health Service program under the Indian Health Care Improvement Act under Chapter 18 of title 25 of the United States Code; and

(5) Any other government-funded program whose principal activity is the direct provision of health care to persons.

Group health plan, for purposes of applying the definition of incurred costs in Sec. 423.100, has the meaning given such term in 29 U.S.C. 1167(1), but specifically excludes a personal health savings vehicle, as used in this subpart.

Incurred costs means costs incurred by a Part D enrollee for covered Part D drugs--

(1) That are not paid for under the Part D plan as a result of application of any annual deductible or other cost-sharing rules for covered Part D drugs prior to the Part D enrollee satisfying the out-of-pocket threshold under Sec. 423.104(d)(5)(iii), including any price differential for which the Part D enrollee is responsible under Sec. 423.124(b); and

(2) That are paid for--

(i) By the Part D enrollee or on behalf of the Part D enrollee by another person, and the Part D enrollee (or person paying on behalf of the Part D enrollee) is not reimbursed through insurance or otherwise, a group health plan, or other third party payment arrangement, or the person paying on behalf of the Part D enrollee is not paying under insurance or otherwise, a group health plan, or third party payment arrangement;

(ii) Under a State Pharmaceutical Assistance Program (as defined in Sec. 423.454); or

(iii) Under Sec. 423.782.

Insurance means a health plan that provides, or pays the cost of

Part D drugs, including, but not limited to, any of the following:

(1) Health insurance coverage (as defined in 42 U.S.C. 300gg-91(b)(1));

(2) A Medicare Advantage plan (as described under section 1851(a)(2) of the Act); and

(3) A PACE organization (as defined under sections 1894(a)(3) and 1934(a)(13) of the Act)

but specifically excluding a personal health savings vehicle.

I/T/U pharmacy means a pharmacy operated by the Indian Health Service, an Indian tribe or tribal organization, or an urban Indian organization, all of which are defined in section 4 of the Indian Health Care Improvement Act, 25 U.S.C. 1603.

Long-term care facility means a skilled nursing facility as defined in section 1819(a) of the Act, or a medical institution or nursing facility for which payment is made for an institutionalized individual under section 1902(q)(1)(B) of the Act.

Long-term care pharmacy means a pharmacy owned by or under contract with a long-term care facility to provide prescription drugs to the facility's residents.

Long-term care network pharmacy means a long-term care pharmacy that is a network pharmacy.

Negotiated prices means prices for covered Part D drugs that—

(1) Are available to beneficiaries at the point of sale at network pharmacies;

(2) Are reduced by those discounts, direct or indirect subsidies, rebates, other price concessions, and direct or indirect remunerations that the Part D sponsor has elected to pass through to Part D enrollees at the point of sale; and

(3) Includes any dispensing fees.

Network pharmacy means a licensed pharmacy that is under contract with a Part D sponsor to provide covered Part D drugs at negotiated prices to its Part D plan enrollees.

Non-preferred pharmacy means a network pharmacy that offers covered Part D drugs at negotiated prices to Part D enrollees at higher cost-sharing levels than apply at a preferred pharmacy.

Or otherwise means through a government-funded health program.

Out-of-network pharmacy means a licensed pharmacy that is not under contract with a Part D sponsor to provide negotiated prices to Part D plan enrollees.

Part D drug means--

(1) Unless excluded under number (2) of this definition, any of the following

[[Page 1102]]

if used for a medically accepted indication (as defined in section 1927(k)(6) of the Act)--

(i) A drug that may be dispensed only upon a prescription and that is described in sections 1927(k)(2)(A)(i) through (iii) of the Act;

(ii) A biological product described in sections 1927(k)(2)(B)(i) through (iii) of the Act;

(iii) Insulin described in section 1927(k)(2)(C) of the Act;

(iv) Medical supplies associated with the injection of insulin, including syringes, needles, alcohol swabs, and gauze; or

(v) A vaccine licensed under section 351 of the Public Health Service Act.

(2) Does not include--

(i) Drugs for which payment as so prescribed and dispensed or administered to an individual is available for that individual under Part A or Part B (even though a deductible may apply, or even though the individual is eligible for coverage under Part A or Part B but has declined to enroll in Part A or Part B); and

(ii) Drugs or classes of drugs, or their medical uses, which may be

Section                    Case 8:11-cv-02297-SDM-AEP   Document 1   Filed 10/11/11   Page 12 of 51   PageID 423.100.htm

excluded from coverage or otherwise restricted under Medicaid under
sections 1927(d)(2) or (d)(3) of the Act, except for smoking cessation
agents.

Person means a natural person, corporation, mutual company,
unincorporated association, partnership, joint venture, limited
liability company, trust, estate, foundation, not-for-profit
corporation, unincorporated organization, government or governmental
subdivision or agency.

Personal health savings vehicle means a vehicle through which
individuals can set aside their own funds to pay for health care
expenses, including covered Part D drugs, on a tax-free basis including
any of the following--

(1) A Health Savings Account (as defined under section 220 of the
Internal Revenue Code);

(2) A Flexible Spending Account (as defined in section 106(c)(2) of
the Internal Revenue Code) offered in conjunction with a cafeteria plan
under section 125 of the Internal Revenue Code; and

(3) An Archer Medical Savings Account (as defined under section 223
of the Internal Revenue Code);

but specifically excluding a Health Reimbursement Arrangement (as
described under Internal Revenue Ruling 2002-41 and Internal Revenue
Notice 2002-45)

Plan allowance means the amount Part D plans that offer coverage
other than defined standard coverage may use to determine their payment
and Part D enrollees' cost-sharing for covered Part D drugs purchased at
an out-of-network pharmacy or in a physician's office in accordance with
the requirements of Sec. 423.124(b).

Preferred drug means a covered Part D drug on a Part D plan's
formulary for which beneficiary cost-sharing is lower than for a non-
preferred drug in the plan's formulary.

Preferred pharmacy means a network pharmacy that offers covered Part
D drugs at negotiated prices to Part D enrollees at lower levels of

http://edocket.access.gpo.gov/cfr_2005/octqtr/42cfr423.100.htm

cost-sharing than apply at a non-preferred pharmacy under its pharmacy network contract with a Part D plan.

Qualified prescription drug coverage means any standard prescription drug coverage or alternative prescription drug coverage

Retail pharmacy means any licensed pharmacy that is not a mail order pharmacy from which Part D enrollees could purchase a covered Part D drug without being required to receive medical services from a provider or institution affiliated with that pharmacy.

Required prescription drug coverage means coverage of Part D drugs under an MA-PD plan that consists of either--

(1) Basic prescription drug coverage; or

(2) Enhanced alternative coverage, provided there is no MA monthly supplemental beneficiary premium (as defined under section 1854(b)(2)(C) of the Act) applied under the plan due to the application of a credit against the premium of a rebate under Sec. 422.266(b) of this chapter.

Rural means a five-digit ZIP code in which the population density is less than 1,000 individuals per square mile.

Standard prescription drug coverage means coverage of Part D drugs that meets the requirements of Sec. 423.104(d). The term standard prescription drug coverage must be either--

[[Page 1103]]

(1) Defined standard coverage (standard prescription drug coverage that provides for cost-sharing as described in Sec. 423.104(d)(2)(i)(A) and (d)(5)(i)); or

(2) Actuarially equivalent standard coverage (standard prescription drug coverage that provides for cost-sharing as described in Sec. 423.104(d)(2)(i)(B) or cost-sharing as described in Sec. 423.104(d)(5)(ii), or both).

Suburban means a five-digit ZIP code in which the population density

is between 1,000 and 3,000 individuals per square mile.

Supplemental benefits means benefits that meet the requirements of Sec. 423.104(f)(1)(ii).

Therapeutically equivalent refers to drugs that are rated as therapeutic equivalents under the Food and Drug Administration's most recent publication of ``Approved Drug Products with Therapeutic Equivalence Evaluations.''

Third party payment arrangement means any contractual or similar arrangement under which a person has a legal obligation to pay for covered Part D drugs.

Urban means a five-digit ZIP code in which the population density is greater than 3,000 individuals per square mile.

Usual and customary (U&C) price means the price that an out-of-network pharmacy or a physician's office charges a customer who does not have any form of prescription drug coverage for a covered Part D drug.

465.003 Definitions.—As used in this chapter, the term:

(1) "Administration" means the obtaining and giving of a single dose of medicinal drugs by a legally authorized person to a patient for her or his consumption.

(2) "Board" means the Board of Pharmacy.

(3) "Consultant pharmacist" means a pharmacist licensed by the department and certified as a consultant pharmacist pursuant to s. 465.0125.

(4) "Data communication device" means an electronic device that receives electronic information from one source and transmits or routes it to another, including, but not limited to, any such bridge, router, switch, or gateway.

(5) "Department" means the Department of Health.

(6) "Dispense" means the transfer of possession of one or more doses of a medicinal drug by a pharmacist to the ultimate consumer or her or his agent. As an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription order for potential adverse reactions, interactions, and dosage regimen she or he deems appropriate in the exercise of her or his professional judgment, and the pharmacist shall certify that the medicinal drug called for by the prescription is ready for transfer. The pharmacist shall also provide counseling on proper drug usage, either orally or in writing, if in the exercise of her or his professional judgment counseling is necessary. The actual sales transaction and delivery of such drug shall not be considered dispensing. The administration shall not be considered dispensing.

(7) "Institutional formulary system" means a method whereby the medical staff evaluates, appraises, and selects those medicinal drugs or proprietary preparations which in the medical staff's clinical judgment are most useful in patient care, and which are available for dispensing by a practicing pharmacist in a Class II institutional pharmacy.

(8) "Medicinal drugs" or "drugs" means those substances or preparations commonly known as "prescription" or "legend" drugs which are required by federal or state law to be dispensed only on a prescription, but shall not include patents or proprietary preparations as hereafter defined.

(9) "Patent or proprietary preparation" means a medicine in its unbroken, original package which is sold to the public by, or under the authority of, the manufacturer or primary distributor thereof and which is not misbranded under the provisions of the Florida Drug and Cosmetic Act.

(10) "Pharmacist" means any person licensed pursuant to this chapter to practice the profession of pharmacy.

(11)(a) "Pharmacy" includes a community pharmacy, an institutional pharmacy, a nuclear pharmacy, a special pharmacy, and an Internet pharmacy.

1. The term "community pharmacy" includes every location where medicinal drugs are compounded, dispensed, stored, or sold or where prescriptions are filled or dispensed on an outpatient basis.

2. The term "institutional pharmacy" includes every location in a hospital, clinic, nursing home, dispensary, sanitarium, extended care facility, or other facility, hereinafter referred to as "health care institutions," where medicinal drugs are compounded, dispensed, stored, or sold.

EXHIBIT 2

Case 8:11-cv-02297-SDM-AEP Document 1 Filed 10/11/11 Page 16 of 51 PageID 16
http://www.myflorida.com/fsc.gov/FileStores/Web/Statutes/FS09/CH046...

3. The term "nuclear pharmacy" includes every location where radioactive drugs and chemicals within the classification of medicinal drugs are compounded, dispensed, stored, or sold. The term "nuclear pharmacy" does not include hospitals licensed under chapter 395 or the nuclear medicine facilities of such hospitals.

4. The term "special pharmacy" includes every location where medicinal drugs are compounded, dispensed, stored, or sold if such locations are not otherwise defined in this subsection.

5. The term "Internet pharmacy" includes locations not otherwise licensed or issued a permit under this chapter, within or outside this state, which use the Internet to communicate with or obtain information from consumers in this state and use such communication or information to fill or refill prescriptions or to dispense, distribute, or otherwise engage in the practice of pharmacy in this state. Any act described in this definition constitutes the practice of pharmacy as defined in subsection (13).

(b) The pharmacy department of any permittee shall be considered closed whenever a Florida licensed pharmacist is not present and on duty. The term "not present and on duty" shall not be construed to prevent a pharmacist from exiting the prescription department for the purposes of consulting or responding to inquiries or providing assistance to patients or customers, attending to personal hygiene needs, or performing any other function for which the pharmacist is responsible, provided that such activities are conducted in a manner consistent with the pharmacist's responsibility to provide pharmacy services.

(12) "Pharmacy intern" means a person who is currently registered in, and attending, a duly accredited college or school of pharmacy, or who is a graduate of such a school or college of pharmacy, and who is duly and properly registered with the department as provided for under its rules.

(13) "Practice of the profession of pharmacy" includes compounding, dispensing, and consulting concerning contents, therapeutic values, and uses of any medicinal drug; consulting concerning therapeutic values and interactions of patent or proprietary preparations, whether pursuant to prescriptions or in the absence and entirely independent of such prescriptions or orders; and other pharmaceutical services. For purposes of this subsection, "other pharmaceutical services" means the monitoring of the patient's drug therapy and assisting the patient in the management of his or her drug therapy, and includes review of the patient's drug therapy and communication with the patient's prescribing health care provider as licensed under chapter 458, chapter 459, chapter 461, or chapter 466, or similar statutory provision in another jurisdiction, or such provider's agent or such other persons as specifically authorized by the patient, regarding the drug therapy. However, nothing in this subsection may be interpreted to permit an alteration of a prescriber's directions, the diagnosis or treatment of any disease, the initiation of any drug therapy, the practice of medicine, or the practice of osteopathic medicine, unless otherwise permitted by law. "Practice of the profession of pharmacy" also includes any other act, service, operation, research, or transaction incidental to, or forming a part of, any of the foregoing acts, requiring, involving, or employing the science or art of any branch of the pharmaceutical profession, study, or training, and shall expressly permit a pharmacist to transmit information from persons authorized to prescribe medicinal drugs to their patients. The practice of the profession of pharmacy also includes the administration of influenza virus immunizations to adults pursuant to s. 465.189.

(14) "Prescription" includes any order for drugs or medicinal supplies written or transmitted by any means of communication by a duly licensed practitioner authorized by the laws of the state to prescribe such drugs or medicinal supplies and intended to be dispensed by a pharmacist. The term also includes an orally transmitted order by the lawfully designated agent of such practitioner. The term also includes

Case 8:11-cv-02297-SDM-AEP   Document 1   Filed 10/11/11   Page 17 of 51 PageID 17

an order written or transmitted by a practitioner licensed to practice in a jurisdiction other than this state, but only if the pharmacist called upon to dispense such order determines, in the exercise of her or his professional judgment, that the order is valid and necessary for the treatment of a chronic or recurrent illness. The term "prescription" also includes a pharmacist's order for a product selected from the formulary created pursuant to s. 465.186. Prescriptions may be retained in written form or the pharmacist may cause them to be recorded in a data processing system, provided that such order can be produced in printed form upon lawful request.

(15) "Nuclear pharmacist" means a pharmacist licensed by the department and certified as a nuclear pharmacist pursuant to s. 465.0126.

(16) "Centralized prescription filling" means the filling of a prescription by one pharmacy upon request by another pharmacy to fill or refill the prescription. The term includes the performance by one pharmacy for another pharmacy of other pharmacy duties such as drug utilization review, therapeutic drug utilization review, claims adjudication, and the obtaining of refill authorizations.

(17) "Automated pharmacy system" means a mechanical system that delivers prescription drugs received from a Florida licensed pharmacy and maintains related transaction information.

History.—ss. 1, 7, ch. 79-226; s. 322, ch. 81-259; ss. 14, 15, ch. 81-302; ss. 2, 3, ch. 81-318; ss. 1, 2, ch. 82-179; s. 1, ch. 83-101; s. 36, ch. 83-216; s. 3, ch. 83-265; s. 29, ch. 83-329; s. 1, ch. 85-35; ss. 2, 26, 27, ch. 86-256; s. 1, ch. 88-172; s. 1, ch. 89-77; s. 59, ch. 91-137; s. 6, ch. 91-156; s. 4, ch. 91-429; s. 123, ch. 94-218; s. 239, ch. 97-103; s. 87, ch. 97-264; s. 118, ch. 99-397; s. 1, ch. 2002-182; s. 1, ch. 2004-25; s. 1, ch. 2004-387; s. 2, ch. 2007-152.

Select Year: 2009 | Go

# The 2009 Florida Statutes

Title XXXII
REGULATION OF PROFESSIONS AND OCCUPATIONS

Chapter 465   View Entire Chapter
PHARMACY

**465.014 Pharmacy technician.--**

(1) A person other than a licensed pharmacist or pharmacy intern may not engage in the practice of the profession of pharmacy, except that a licensed pharmacist may delegate to pharmacy technicians who are registered pursuant to this section those duties, tasks, and functions that do not fall within the purview of s. 465.003(13). All such delegated acts shall be performed under the direct supervision of a licensed pharmacist who shall be responsible for all such acts performed by persons under his or her supervision. A pharmacy registered technician, under the supervision of a pharmacist, may initiate or receive communications with a practitioner or his or her agent, on behalf of a patient, regarding refill authorization requests. A licensed pharmacist may not supervise more than one registered pharmacy technician unless otherwise permitted by the guidelines adopted by the board. The board shall establish guidelines to be followed by licensees or permittees in determining the circumstances under which a licensed pharmacist may supervise more than one but not more than three pharmacy technicians.

$^1$(2) Any person who wishes to work as a pharmacy technician in this state must register by filing an application with the board on a form adopted by rule of the board. The board shall register each applicant who has remitted a registration fee set by the board, not to exceed $50 biennially; has completed the application form and remitted a nonrefundable application fee set by the board, not to exceed $50; and is at least 17 years of age.

(3) A person whose license to practice pharmacy has been denied, suspended, or restricted for disciplinary purposes is not eligible to register as a pharmacy technician.

(4) Notwithstanding the requirements of this section or any other provision of law, a pharmacy technician student who is enrolled in a pharmacy technician training program that is approved by the board may be placed in a pharmacy for the purpose of obtaining practical training. A pharmacy technician student shall wear identification that indicates his or her student status when performing the functions of a pharmacy technician, and registration under this section is not required.

(5) Notwithstanding the requirements of this section or any other provision of law, a person who is licensed by the state as a pharmacy intern may be employed as a registered pharmacy technician without paying a registration fee or filing an application with the board to register as a pharmacy technician.

(6) As a condition of registration renewal, a registered pharmacy technician shall complete 20 hours biennially of continuing education courses approved by the board or the Accreditation Council for

EXHIBIT 3

Select Year: 2009    Go

## The 2009 Florida Statutes

| Title XXXII | Chapter 465 | View Entire Chapter |
| --- | --- | --- |
| REGULATION OF PROFESSIONS AND OCCUPATIONS | PHARMACY | |

**465.003 Definitions.**--As used in this chapter, the term:

(1) "Administration" means the obtaining and giving of a single dose of medicinal drugs by a legally authorized person to a patient for her or his consumption.

(2) "Board" means the Board of Pharmacy.

(3) "Consultant pharmacist" means a pharmacist licensed by the department and certified as a consultant pharmacist pursuant to s. 465.0125.

(4) "Data communication device" means an electronic device that receives electronic information from one source and transmits or routes it to another, including, but not limited to, any such bridge, router, switch, or gateway.

(5) "Department" means the Department of Health.

(6) "Dispense" means the transfer of possession of one or more doses of a medicinal drug by a pharmacist to the ultimate consumer or her or his agent. As an element of dispensing, the pharmacist shall, prior to the actual physical transfer, interpret and assess the prescription order for potential adverse reactions, interactions, and dosage regimen she or he deems appropriate in the exercise of her or his professional judgment, and the pharmacist shall certify that the medicinal drug called for by the prescription is ready for transfer. The pharmacist shall also provide counseling on proper drug usage, either orally or in writing, if in the exercise of her or his professional judgment counseling is necessary. The actual sales transaction and delivery of such drug shall not be considered dispensing. The administration shall not be considered dispensing.

(7) "Institutional formulary system" means a method whereby the medical staff evaluates, appraises, and selects those medicinal drugs or proprietary preparations which in the medical staff's clinical judgment are most useful in patient care, and which are available for dispensing by a practicing pharmacist in a Class II institutional pharmacy.

(8) "Medicinal drugs" or "drugs" means those substances or preparations commonly known as "prescription" or "legend" drugs which are required by federal or state law to be dispensed only on a prescription, but shall not include patents or proprietary preparations as hereafter defined.

(9) "Patent or proprietary preparation" means a medicine in its unbroken, original package which is sold to the public by, or under the authority of, the manufacturer or primary distributor thereof and which is not misbranded under the provisions of the Florida Drug and Cosmetic Act.

(10) "Pharmacist" means any person licensed pursuant to this chapter to practice the profession of pharmacy.

(11)(a) "Pharmacy" includes a community pharmacy, an institutional pharmacy, a nuclear pharmacy, a special pharmacy, and an Internet pharmacy.

1. The term "community pharmacy" includes every location where medicinal drugs are compounded, dispensed, stored, or sold or where prescriptions are filled or dispensed on an outpatient basis.

2. The term "institutional pharmacy" includes every location in a hospital, clinic, nursing home, dispensary, sanitarium, extended care facility, or other facility, hereinafter referred to as "health care institutions," where medicinal drugs are compounded, dispensed, stored, or sold.

3. The term "nuclear pharmacy" includes every location where radioactive drugs and chemicals within the classification of medicinal drugs are compounded, dispensed, stored, or sold. The term "nuclear pharmacy" does not include hospitals licensed under chapter 395 or the nuclear medicine facilities of such hospitals.

4. The term "special pharmacy" includes every location where medicinal drugs are compounded, dispensed, stored, or sold if such locations are not otherwise defined in this subsection.

5. The term "Internet pharmacy" includes locations not otherwise licensed or issued a permit under this chapter, within or outside this state, which use the Internet to communicate with or obtain information from consumers in this state and use such communication or information to fill or refill prescriptions or to dispense, distribute, or otherwise engage in the practice of pharmacy in this state. Any act described in this definition constitutes the practice of pharmacy as defined in subsection (13).

(b) The pharmacy department of any permittee shall be considered closed whenever a Florida licensed pharmacist is not present and on duty. The term "not present and on duty" shall not be construed to prevent a pharmacist from exiting the prescription department for the purposes of consulting or responding to inquiries or providing assistance to patients or customers, attending to personal hygiene needs, or performing any other function for which the pharmacist is responsible, provided that such activities are conducted in a manner consistent with the pharmacist's responsibility to provide pharmacy services.

(12) "Pharmacy intern" means a person who is currently registered in, and attending, a duly accredited college or school of pharmacy, or who is a graduate of such a school or college of pharmacy, and who is duly and properly registered with the department as provided for under its rules.

(13) "Practice of the profession of pharmacy" includes compounding, dispensing, and consulting concerning contents, therapeutic values, and uses of any medicinal drug; consulting concerning therapeutic values and interactions of patent or proprietary preparations, whether pursuant to prescriptions or in the absence and entirely independent of such prescriptions or orders; and other pharmaceutical services. For purposes of this subsection, "other pharmaceutical services" means the

monitoring of the patient's drug therapy and assisting the patient in the management of his or her drug therapy, and includes review of the patient's drug therapy and communication with the patient's prescribing health care provider as licensed under chapter 458, chapter 459, chapter 461, or chapter 466, or similar statutory provision in another jurisdiction, or such provider's agent or such other persons as specifically authorized by the patient, regarding the drug therapy. However, nothing in this subsection may be interpreted to permit an alteration of a prescriber's directions, the diagnosis or treatment of any disease, the initiation of any drug therapy, the practice of medicine, or the practice of osteopathic medicine, unless otherwise permitted by law. "Practice of the profession of pharmacy" also includes any other act, service, operation, research, or transaction incidental to, or forming a part of, any of the foregoing acts, requiring, involving, or employing the science or art of any branch of the pharmaceutical profession, study, or training, and shall expressly permit a pharmacist to transmit information from persons authorized to prescribe medicinal drugs to their patients. The practice of the profession of pharmacy also includes the administration of influenza virus immunizations to adults pursuant to s. 465.189.

(14) "Prescription" includes any order for drugs or medicinal supplies written or transmitted by any means of communication by a duly licensed practitioner authorized by the laws of the state to prescribe such drugs or medicinal supplies and intended to be dispensed by a pharmacist. The term also includes an orally transmitted order by the lawfully designated agent of such practitioner. The term also includes an order written or transmitted by a practitioner licensed to practice in a jurisdiction other than this state, but only if the pharmacist called upon to dispense such order determines, in the exercise of her or his professional judgment, that the order is valid and necessary for the treatment of a chronic or recurrent illness. The term "prescription" also includes a pharmacist's order for a product selected from the formulary created pursuant to s. 465.186. Prescriptions may be retained in written form or the pharmacist may cause them to be recorded in a data processing system, provided that such order can be produced in printed form upon lawful request.

(15) "Nuclear pharmacist" means a pharmacist licensed by the department and certified as a nuclear pharmacist pursuant to s. 465.0126.

(16) "Centralized prescription filling" means the filling of a prescription by one pharmacy upon request by another pharmacy to fill or refill the prescription. The term includes the performance by one pharmacy for another pharmacy of other pharmacy duties such as drug utilization review, therapeutic drug utilization review, claims adjudication, and the obtaining of refill authorizations.

(17) "Automated pharmacy system" means a mechanical system that delivers prescription drugs received from a Florida licensed pharmacy and maintains related transaction information.

History.--ss. 1, 7, ch. 79-226; s. 322, ch. 81-259; ss. 14, 15, ch. 81-302; ss. 2, 3, ch. 81-318; ss. 1, 2, ch. 82-179; s. 1, ch. 83-101; s. 36, ch. 83-216; s. 3, ch. 83-265; s. 29, ch. 83-329; s. 1, ch. 85-35; ss. 2, 26, 27, ch. 86-256; s. 1, ch. 88-172; s. 1, ch. 89-77; s. 59, ch. 91-137; s. 6, ch. 91-156; s. 4, ch. 91-429; s. 123, ch. 94-218; s. 239, ch. 97-103; s. 87, ch. 97-264; s. 118, ch. 99-397; s. 1, ch. 2002-182; s. 1, ch. 2004-25; s. 1, ch. 2004-387; s. 2, ch. 2007-152.

Copyright © 1995-2011 The Florida Legislature • Privacy Statement • Contact Us

**64B16-27.1001 Practice of Pharmacy.**

Those functions within the definition of the practice of the profession of pharmacy, as defined by Section 465.003(13), F.S., are specifically reserved to a pharmacist or a duly registered pharmacy intern in this state acting under the direct and immediate personal supervision of a pharmacist. The following subjects come solely within the purview of the pharmacist.

(1) A pharmacist or registered pharmacy intern must:

(a) Supervise and be responsible for the controlled substance inventory.

(b) Receive verbal prescriptions from a practitioner.

(c) Interpret and identify prescription contents.

(d) Engage in consultation with a practitioner regarding interpretation of the prescription and date in patient profile.

(e) Engage in professional communication with practitioners, nurses or other health professionals.

(f) Advise or consult with a patient, both as to the prescription and the patient profile record.

(2) When parenteral and bulk solutions of all sizes are prepared, regardless of the route of administration, the pharmacist must:

(a) Interpret and identify all incoming orders.

(b) Mix all extemporaneous compounding or be physically present and give direction to the registered pharmacy technician for reconstitution, for addition of additives, or for bulk compounding of the parenteral solution.

(c) Physically examine, certify to the accuracy of the final preparation, thereby assuming responsibility for the final preparation.

(d) Systemize all records and documentation of processing in such a manner that professional responsibility can be easily traced to a pharmacist.

(3) Only a pharmacist may make the final check of the completed prescription thereby assuming the complete responsibility for its preparation and accuracy.

(4) The pharmacist, as an integral aspect of dispensing, shall be directly and immediately available to the patient or the patient's agent for consultation and shall not dispense to a third party. No prescription shall be deemed to be properly dispensed unless the pharmacist is personally available.

(5) The pharmacist performing in this state any of the acts defined as "the practice of the profession of pharmacy" in Section 465.003(13), F.S., shall be actively licensed as a pharmacist in this state, regardless of whether the practice occurs in a permitted location (facility) or other location.

(6) The pharmacist may take a meal break, not to exceed 30 minutes in length, during which the pharmacy department of a permittee shall not be considered closed, under the following conditions:

(a) The pharmacist shall be considered present and on duty during any such meal break if a sign has been prominently posted in the pharmacy indicating the specific hours of the day during which meal breaks may be taken by the pharmacist and assuring patients that a pharmacist is available on the premises for consultation upon request during a meal break.

(b) The pharmacist shall be considered directly and immediately available to patients during such meal breaks if patients to whom medications are delivered during meal breaks are verbally informed that they may request that a pharmacist contact them at the pharmacist's earliest convenience after the meal break, and if a pharmacist is available on the premises during the meal break for consultation regarding emergency matters. Only prescriptions with the final certification by the pharmacist may be delivered.

(c) The activities of registered pharmacy technicians during such a meal break shall be considered to be under the direct and immediate personal supervision of a pharmacist if the pharmacist is available on the premises during the meal break to respond to questions by the technicians, and if at the end of the meal break the pharmacist certifies all prescriptions prepared by the registered pharmacy technicians during the meal break.

(7) The delegation of any duties, tasks or functions to registered pharmacy interns and registered pharmacy technicians must be performed subject to a continuing review and ultimate supervision of the pharmacist who instigated the specific task, so that a continuity of supervised activity is present between one pharmacist and one registered pharmacy technician. In every pharmacy, the pharmacist shall retain the professional and personal responsibility for any delegated act performed by registered pharmacy interns and registered pharmacy technicians in the licensee's employ or under the licensee's supervision.

*Rulemaking Authority 465.005, 465.0155 FS. Law Implemented 465.003(11)(b), (13), 465.014, 465.026 FS. History–New 11-18-07, Amended 1-1-10.*

EXHIBIT 4

ALV / MEDICARE

70095 3443

4/29
3/31      } JEK
2/1 5

1/18    } TAK                                    ALV
11/18/09

10/21/09   JEK


medicaID
701 201 5Y 9   5/28 JEK 21:42
               4/18 TZ  16:03
               3/26  JGIK
               1/22   TZ


70137354 2
         JEK 5/28  21:42 "on d "


701 936653
        5/28   JEK 21:42
      4/29 TZ  9:44          "Ton "
      3/18 TZ 21:51

EXHIBIT 5

702628481
famotd
Aetna Medicare

5/19          JEK 22:01


medicare 70268 08 20
verap 240
5/19          JEK 22:30

ALV

Medicare

① 7010 54200

     5/20/10 TAL   22:49

     | Qmo

    6/28/09 JEK 20:03

② 702117.131  Medicare

     5/20/10 TAL 22:33

     |

    12/26/09 JEK 22:35

③ 702477.19 ST  Medicaid

     5/20/10  TAL 22:51

     ↓ Rph Duly  JEK1 = Not here left 7

    3/27   11:30  JK



700928526
AL✓ .   Covery
          Advait

5/19     22:01   JEK
4/17     22:24   FA✓

Medicare   701674931
            Cymb 20

5/19/10   22:30  JE K

10/19/0 9   JEK

702296512   Medic
Cym 60   5/18  22:01  JEK
         4/19  0:14    TAK
         3/22  TA✓ 01:41

4/13/10

John Keeling
left @
5:15pm

11:55pm
AF BM Giot tech
ALV w/
JEK
checking

6773 /
6773 S

all Aiv
medicare        Review
701 13 9086 — 4/14/10   JEK
                 2/9/10   21:4
701 236 53 1 —PBM   2/9/10   21:17
702 134 59 2



i 9 S

7/24/10 ALV

Saturday

701231697

TAZ  15:26

10/22/09  JEK  07:59

Medicare
MCA

11/19/09

vac   9/10   ALV   medicare

JEK ←

Showed JEK RPh
checked -reviewed
but he was
on Vacation

Mdo 7022694 35
JEK 21:55

" 7025621 46
JEK 21:55

" 7025621 46
21:55 JEK

7030598 80

Medicare

9   9   S

702811870
Sertral 50

AcV    4/8 TAZ    01:15:05

Medicare
████████████, Rosemary

702811870
Sert 25

AcV
4/21 TAZ    20:30:06

Omnicare of Tampa
8603 Florida Mining Blvd
Tampa, FL 33634
October 6, 2010

Department of Health
Consumer Services Unit
4052 Bald Cypress Way
 Bin c75
TLH, FL 32399-3275

To Whom It May Concern:

I am a pharmacy technician at Omnicare of Tampa. I have been checking prescriptions
illegally using the pharmacy managers, Todd Zisek or John Keeling's password. I am in
the robotic ALV area. I am uncomfortable with this situation but I am afraid I will lose
my job if I say anything. A pharmacist is used in this area if there is an audit or a tour of
the pharmacy. There are other technicians who can verify this situation and the
prescriptions coming out of this area show that these two pharmacists have their
identification approval  in the computer. This is 24 hours a day and 7 days a week.
Your attention to this illegal situation is appreciated.

Thank you

EXHIBIT 6

**From:** lesa martino whalen [mailto:lesa1234@earthlink.net]
**Sent:** Friday, November 12, 2010 10:37 AM
**To:** 'todd.zisek@omnicare.com'
**Subject:** Standards of conduct

After reviewing the standards of conduct, the falsification of forms, records or reports, application materials or patient records, this seems to fall in the category of you and John Keeling letting technicians use your password to check prescription in the ALV area. This is against the company policy and also with the Board of Pharmacy. Since the situation has been reprimanded by the board, pharmacists have been hired to check prescriptions in this area. Patient records were showing a pharmacist checking their prescriptions but this was not the case in the ALV area.

EXHIBIT 7

Omnicare of Tampa
8603 Florida Mining Blvd
Tampa, FL 33634
January 20, 2011

I am respectfully submitting this complaint against Todd Zisek RPh, General Manager at
Omnicare of Tampa. Mr. Zisek provided his user name Fl1TAZ and password poundit to
pharmacy technicians which allowed them to illegally check prescriptions in the ALV
area. A copy of the password sheet that technicians used is attached. This is a misconduct
of falsifying patient records. The following are prescription numbers for Medicare and
Medicaid patients whose prescriptions were checked by a technician rather than a
pharmacist:

702117131 May 20, 2010 22:33
701054200 May 20, 2010 22:49
702471957 May 20, 2010 22:51
701936653 March 18, 2010 21:51
702586111 May 3, 2010
702295928 May 19, 2010

This is just an example of the thousands of prescriptions illegally checked by technicians
such as Andy since the facility opened up.

Respectfully submitted,


Lesa Martino PharmD



cc: Figueroa, CEO
cc: Area director of human resources
cc:Department of Health Consumer
Services Unit

EXHIBIT 8

```
  5/24/10                    Display Product Package Details              OE251Y
 23:08:03                                                                DISPLAY

Rx# . . . . . . . . . :     702222657       ORDER IS COMPLETE
Order# . . . . . . . :       23053283
Product Selected . . :      MIRTAZAPINE 30 MG TABLET{30 EA}
        Pkg . . . . . :     D30            Record Type . . :   C  Confirmed
Inventory Location . :      *10124
WIP Tote ID . . . . . :     WIP13333       WIP Tote Status :   C  Closed
                                           Rph On Duty:  . :   FL1JEK1
Delivery Ticket ID . :      5043332        DELIVERY TICKET PRINTED
   Driver  . . . . . :
   Received By . . . :
   Printed By  . . . :     FL1DS1      4/25/2010   19:25:50
   Transitioned By . :
   Transferred By  . :
   Confirmed By  . . :


                            Qty      User        Date      Time    Program
Picked  . . . . . . . :     30.00   FL1TTH     4/25/2010 12:29:50 AL100Y
Reviewed  . . . . . . :     30.00   FL1TAZ     4/25/2010 12:33:52 AL100Y
Shipped . . . . . . . :     30.00   FL1DS1     4/25/2010 15:10:23 AL101Y
F3=Exit
```

ALV

Technician
not TAZ
Checked Rx

```
   5/24/10               Display Product Package Details              OE251Y
   23:09:22                                                           DISPLAY

Rx# . . . . . . . . . :     702693609      ORDER IS COMPLETE
Order# . . . . . . . :      23415899
Product Selected . . :      AVAPRO 150 MG TABLET{500 EA}
         Pkg . . . . . :    D30          Record Type . . :   C  Confirmed
Inventory Location . :      K-610
WIP Tote ID . . . . . :     ASL13032     WIP Tote Status :    C  Closed
                                         Rph On Duty:  . :    FL1TAZ
Delivery Ticket ID . :      4878238      DELIVERY TICKET PRINTED
     Driver . . . . . :
     Received By . . . :
     Printed By . . . :      FL1HCO       3/22/2010  14:56:16
     Transitioned By . :
     Transferred By  . :
     Confirmed By  . . :

                            Qty     User        Date      Time   Program
Picked . . . . . . . :      30.00  FL1SRK    3/22/2010 14:29:39 AL100Y
Reviewed . . . . . . :      30.00  FL1TAZ    3/22/2010 14:44:21 AL100Y
Shipped . . . . . . . :     30.00  FL1HCO    3/22/2010 14:54:37 SC120Y
F3=Exit
```

```
7/01/10                    Display Product Package Details                    OE251Y
21:36:24                                                                      DISPLAY

Rx# . . . . . . . . . . :    701597427        PHARM2 REVIEW
Order#  . . . . . . . . :    20877217
Product Selected  . . :      ZYPREXA 10 MG TABLET{1000 EA}
        Pkg . . . . . :      D30             Record Type . . :   C  Confirmed
Inventory Location  . :      H-230
WIP Tote ID . . . . . :      ASL13146        WIP Tote Status :   O  Open
                                             Rph On Duty:  . :   FL1JEK1
Delivery Ticket ID  . :
```

```
                              Qty      User         Date       Time    Program
Picked  . . . . . . . :      30.00   FL1JSB    7/01/2010 21:20:56 AL100Y
Reviewed  . . . . . . :      30.00   FL1TAZ    7/01/2010 21:28:49 AL100Y
Shipped . . . . . . . :
F3=Exit
```

```
 7/01/10              Display Product Package Details              OE251Y
21:36:24                                                          DISPLAY

Rx# . . . . . . . . :   701597427      PHARM2 REVIEW
Order#  . . . . . . . :    20877217
Product Selected  . . :   ZYPREXA 10 MG TABLET{1000 EA}
          Pkg . . . . . :   D30          Record Type . . :   C  Confirmed
Inventory Location  . :   H-230
WIP Tote ID . . . . . :   ASL13146       WIP Tote Status :   O  Open
                                         Rph On Duty:  . :   FL1JEK1

Delivery Ticket ID  . :
```

```
                        Qty     User           Date       Time    Program
Picked  . . . . . . . :   30.00  FL1JSB     7/01/2010 21:20:56 AL100Y
Reviewed  . . . . . . :   30.00  FL1TAZ     7/01/2010 21:28:49 AL100Y
Shipped . . . . . . . :
F3=Exit
```

Omnicare of Tampa
8603 Florida Mining Blvd
Tampa, FL 33634
January 20, 2011

I am respectfully submitting this complaint against John Keeling RPh, a manager at
Omnicare of Tampa. Mr. Keeling provided his user name Fl1JEK1 and password V734
to pharmacy technicians which allowed them to illegally check prescriptions in the ALV
area. A copy of the password sheet that technicians used is attached. This is a misconduct
of falsifying patient records. The following are prescription numbers for Medicare and
Medicaid patients whose prescriptions were checked by a technician rather than a
pharmacist:

702117131 December 26, 2009 22:33
701054200  June 28, 2009 20:03
701936653 May 28, 2010 21:42
702586111 May 31, 2010 22:12:13
702295928 May 31, 2010  22:12:15
702471957 March 27, 2010 11:30

This is just an example of the thousands of prescriptions illegally checked by technicians
since the facility opened up.

Respectfully submitted,


Lesa Martino PharmD



cc: Figueroa, CEO
cc: Area director of human resources
cc:Department of Health Consumer
Services Unit

EXHIBIT 9

```
  5/24/10                    Display Product Package Details                  OE251Y
 23:08:54                                                                    DISPLAY

Rx# . . . . . . . . . . :    702693609          ORDER IS COMPLETE
Order#   . . . . . . . . :    23415899
Product Selected  . . :      AVAPRO 150 MG TABLET{500 EA}
        Pkg . . . . . :      D30             Record Type . . :   C  Confirmed
Inventory Location  . :      K-610
WIP Tote ID . . . . . :      ASL13107        WIP Tote Status :   C  Closed
                                             Rph On Duty:   . :   FL1JEK1
Delivery Ticket ID  . :      5044207         DELIVERY TICKET PRINTED
     Driver   . . . . . :
     Received By . . . :
     Printed By  . . . :      FL1DS1          4/25/2010  20:09:47
     Transitioned By . :
     Transferred By  . :
     Confirmed By  . . :

                             Qty      User          Date      Time     Program
Picked   . . . . . . . :     30.00   FL1JDF    4/25/2010 19:39:57 AL100Y
Reviewed   . . . . . . :     30.00   FL1JEK1   4/25/2010 19:48:52 AL100Y
Shipped . . . . . . . :      30.00   FL1DS1    4/25/2010 20:05:18 SC120Y
F3=Exit
```

```
Rx# . . . . . . . . . . :      702222657          ORDER IS COMPLETE
Order# . . . . . . . . :        23053283
Product Selected  . . :       MIRTAZAPINE 30 MG TABLET{30 EA}
         Pkg . . . . . :       D30             Record Type . . :    C  Confirmed
Inventory Location  . :        *10124
WIP Tote ID . . . . . :        WIP13145          WIP Tote Status :    C  Closed
                                                 Rph On Duty:  . :    FL1JEK1
Delivery Ticket ID  . :        4892956          DELIVERY TICKET PRINTED
    Driver  . . . . . :
    Received By . . . :
    Printed By  . . . :        FL1HCO            3/25/2010  15:32:12
    Transitioned By . :
    Transferred By  . :
    Confirmed By  . . :

                               Qty       User          Date       Time      Program
Picked  . . . . . . . :        30.00    FL1TTH     3/25/2010 06:58:28 AL100Y
Reviewed  . . . . . . :        30.00    FL1JEK1    3/25/2010 07:54:50 AL100Y
Shipped . . . . . . . :        30.00    FL1FIH     3/25/2010 08:03:38 SC120Y
F3=Exit
```

```
 5/24/10                    Display Product Package Details              OE251Y
23:08:54        .                                                       DISPLAY


Rx# . . . . . . . . . :    702693609          ORDER IS COMPLETE
Order#   . . . . . . . :    23415899
Product Selected  . . :    AVAPRO 150 MG TABLET{500 EA}
         Pkg . . . . . :    D30            Record Type . . :   C  Confirmed
Inventory Location  . :    K-610
WIP Tote ID . . . . . :    ASL13107      WIP Tote Status :   C  Closed .
                                         Rph On Duty:   . :   FL1JEK1

Delivery Ticket ID  . :    5044207      DELIVERY TICKET PRINTED
       Driver  . . . . :
     Received By . . . :
       Printed By  . . :    FL1DS1        4/25/2010   20:09:47
    Transitioned By . :
    Transferred By  . :
     Confirmed By  . . :

                                Qty    User        Date     Time    Program
                                                 4/25/2010 19:39:57 AL100Y
Picked   . . . . . . . :       30.00  FL1JDF .   4/25/2010 19:48:52 AL100Y
Reviewed  . . . . . . :        30.00  FL1JEK1    4/25/2010 20:05:18 SC120Y
Shipped . . . . . . . :        30.00  FL1DS1
F3=Exit
```

```
  5/31/10                 Display Product Package Details              OE251Y
 22:53:49                                                              DISPLAY

 Rx# . . . . . . . . . :    702295928      PHARM2 REVIEW
 Order# . . . . . . . :     23204605
 Product Selected . . :     HALOPERIDOL 10 MG TABLET{100 EA}
            Pkg . . . . . :  D30           Record Type . . :   C  Confirmed
 Inventory Location  . :     H-638
 WIP Tote ID . . . . . :     ASL13108      WIP Tote Status :   O  Open
                                           Rph On Duty:  . :   FL1JEK1
 Delivery Ticket ID  . :
```

ALV

```
                       Qty      User          Date       Time    Program
 Picked  . . . . . . . :   30.00  FL1HLO    6/01/2010 10:07:46  AL100Y
 Reviewed . . . . . . . :  30.00  FL1JEK1   5/31/2010 22:12:15  AL100Y
 Shipped . . . . . . . :
 F3=Exit
```

TAZ   5/19/10

Suppose to be
   checked by pharmacist
      prescriptions
         billed to
            medicare

Medicare



```
  5/31/10                   Display Product Package Details                OE251Y
 22:54:55                                                                 DISPLAY

Rx# . . . . . . . . . :    702586111         PHARM2 REVIEW
Order#  . . . . . . . :     13227582
Product Selected  . . :    CITALOPRAM HBR 40 MG TABLET{500 EA}
        Pkg . . . . . :    D30              Record Type . . :   C   Confirmed
Inventory Location  . :    *10915
WIP Tote ID . . . . . :    ASL13108         WIP Tote Status :   O   Open
                                            Rph On Duty:  . :   FL1JEK1

Delivery Ticket ID  . :
```

```
                                   Qty     User        Date       Time    Program
Picked   . . . . . . . :          30.00  FL1HLO   6/01/2010 10:07:32 AL100Y
Reviewed  . . . . . . :           30.00  FL1JEK1  5/31/2010 22:12:13 AL100Y
Shipped . . . . . . . :                    N
F3=Exit
```

5/19

medicare

TAZ    5/3
JEK    4/5

Medicare

```
  5/31/10               Display Product Package Details              OE251Y
  22:49:55                                                           DISPLAY

Rx# . . . . . . . . . :    701206041      PHARM2 REVIEW
Order#  . . . . . . . :     14214784
Product Selected . . :    BUSPIRONE HCL 15 MG TABLET{500 EA}
        Pkg . . . . . :    D30              Record Type . . :   C   Confirmed
Inventory Location  . :    *11003
WIP Tote ID . . . . . :    ASL13108         WIP Tote Status :   O   Open
                                            Rph On Duty:  . :      FL1JEK1
Delivery Ticket ID  . :
```

```
                           Qty      User           Date       Time    Program
Picked  . . . . . . . :    30.00   FL1HLO      6/01/2010 10:06:56 AL100Y
Reviewed  . . . . . . :    30.00   FL1JEK1     5/31/2010 22:12:12 AL100Y
Shipped . . . . . . . :
F3=Exit
```

Medicare

JEK 6/1/09

```
7/01/10                      Display Product Package Details              OE251Y
21:37:07                                                                  DISPLAY

Rx# . . . . . . . . . . :    701597427          ORDER IS COMPLETE
Order#  . . . . . . . . :     20877217
Product Selected  . . :      ZYPREXA 10 MG TABLET{1000 EA}
        Pkg . . . . . :      D30             Record Type . . :   C  Confirmed
Inventory Location  . :      H-230
WIP Tote ID . . . . . :      ASL13064        WIP Tote Status :   C  Closed
                                             Rph On Duty:  . :   FL1TAZ
Delivery Ticket ID  . :      4138905         DELIVERY TICKET PRINTED
    Driver  . . . . . :
    Received By . . . :
    Printed By  . . . :      FL1DS1          10/09/2009  22:39:47
    Transitioned By . :
    Transferred By  . :
    Confirmed By  . . :

                              Qty      User          Date       Time    Program
Picked  . . . . . . . :      30.00   FL1KLM    10/09/2009 20:15:56 AL100Y
Reviewed  . . . . . . :      30.00   FL1JEK1   10/09/2009 21:30:53 AL100Y
Shipped . . . . . . . :      30.00   FL1GEW    10/09/2009 21:34:39 SC120Y
F3=Exit
```

```
  7/01/10                      Display an Order                      OB606Y

Status . . :     Entered
Order Type :     RX  Cust: 406690                             DOB:  2/16/1970
Order# . . :      22956323   Facility: 171        PALM TERRACE SNF ST PETE
RX# . . . :      702173816   Ship To:  000003     Unit: PTSW1
Prescriber :     TIRUPATHI, SREELATHA              Room: 118      Bed: B
Product*   Qty/Dose  Frq UM   ROA PRN    Rtn Part   Ext Qty PPK Days Supply
114585       1.00   QD EA     PO          Y   N      30.00 EA     30
BUMEX 0.5 MG TABLET{100 EA}             Dispense as EDK  N  EDK Qty         .00
132845       1.00   UM EA
BUMETANIDE 0.5 MG TABLET{100 EA}


Start Date  1/06/2010   End Date            Written Date  1/06/2010
Directions: GIVE 1 TABLET BY MOUTH ONCE DAILY    DX:EDEMA

Dft Times: 9AM                              Derived From: FUN
Ovr Times:                                     Dsp Mthd  ROD
DAW 0   ICD9        Max Rfl/Rfls Rmng    /     #Labels   1 #Addtl Lbls     0
COVERAGE: DHLTNT HEALTH NET MEDICARE
F3=Exit  F9=Maintain Order  F10=Actions  F13=MR  F14=Fills   F15=Overrides
F16=Fld Audit  F17=Doc Img  F19=Hang-Ups  F20=Components   F23=Lbl Appearance
```

```
  7/01/10               Display Product Package Details              OE251Y
 21:40:29                                                           DISPLAY

Rx# . . . . . . . . . :    702173816      ORDER IS COMPLETE
Order# . . . . . . . . :     22956323
Product Selected  . . :    BUMETANIDE 0.5 MG TABLET{100 EA}
      Pkg . . . . . :    D30         Record Type . . :   C  Confirmed
Inventory Location  . :    L-104
WIP Tote ID . . . . . :    ASL13147      WIP Tote Status :   C  Closed
                                         Rph On Duty:  . :    FL1TAZ
Delivery Ticket ID  . :    4537719      DELIVERY TICKET PRINTED
    Driver  . . . . . :
    Received By . . . :
    Printed By  . . . :    FL1PER        1/06/2010  06:52:56
    Transitioned By . :
    Transferred By  . :
    Confirmed By  . . :


                           Qty       User        Date       Time   Program
Picked  . . . . . . . :    30.00    FL1JDF     1/06/2010  03:44:02 AL100Y
Reviewed  . . . . . . :    30.00    FL1JEK1    1/06/2010  03:51:34 AL100Y
Shipped . . . . . . . :    30.00    FL1FIH     1/06/2010  06:02:46 SC120Y
F3=Exit
```

```
Status . . :    Entered
Order Type :    RXP Cust: 229068                           G.        DOB: 10/20/1930
Order# . . :     20877217   Facility: 2090       JACARANDA MANOR
RX# . . . :     701597427   Ship To:  000001     Unit: JAC1E
Prescriber :    DILELLA, VINCENT                  Room: 4111    Bed: A
Product*   Qty/Dose  Frq UM   ROA PRN    Rtn Part   Ext Qty PPK Days Supply
123553       1.00   HS EA    PO          Y   N      30.00  EA     30
ZYPREXA 10 MG TABLET{1000 EA}            Dispense as EDK  N  EDK Qty        .00
123553       1.00   UM EA
ZYPREXA 10 MG TABLET{1000 EA}


Start Date  7/28/2009   End Date           Written Date  7/28/2009
Directions: GIVE 1 TABLET BY MOUTH AT BEDTIME   DX:SCHIZOPHREMNIA

Dft Times:                          9PM        Derived From: FUN
Ovr Times:                                     Dsp Mthd  ROD
DAW 0   ICD9     Max Rfl/Rfls Rmng    /    #Labels    1 #Addtl Lbls        0
COVERAGE: DPRSRX PRESCRIBARX MEDICARE PDP
F3=Exit  F9=Maintain Order  F10=Actions  F13=MR  F14=Fills   F15=Overrides
F16=Fld Audit  F17=Doc Img  F19=Hang-Ups  F20=Components   F23=Lbl Appearance
```

$496.50 each fill

```
Rx# . . . . . . . . . :   701597427      ORDER IS COMPLETE
Order# . . . . . . . :     20877217
Product Selected . . :     ZYPREXA 10 MG TABLET{1000 EA}
         Pkg . . . . . :    D30            Record Type . . :   C  Confirmed
Inventory Location . :     H-230
WIP Tote ID . . . . . :     ASL13064       WIP Tote Status :   C  Closed
                                           Rph On Duty:  . :   FL1TAZ
Delivery Ticket ID . :     4138905      DELIVERY TICKET PRINTED
      Driver . . . . . :
      Received By . . . :
      Printed By . . . :   FL1DS1         10/09/2009  22:39:47
      Transitioned By . :
      Transferred By  . :
      Confirmed By  . . :

                           Qty      User          Date       Time     Program
Picked . . . . . . . :     30.00   FL1KLM    10/09/2009 20:15:56 AL100Y
Reviewed . . . . . . :     30.00   FL1JEK1   10/09/2009 21:30:53 AL100Y
Shipped . . . . . . . :    30.00   FL1GEW    10/09/2009 21:34:39 SC120Y
F3=Exit
```